WEATHERFORD v. STATE.

Opinion delivered February 17, 1906.

1. INSTRUCTION—INTEREST OF ACCUSED IN RESULT.—It was not error to charge the jury that they had the right, in estimating the weight to be attached to the testimony of the accused, to consider his interest in the trial and verdict. (Page 38.)

2. CONTINUANCE—DILIGENCE.—It was not error to refuse to grant a continuance on account of the absence of a witness if the motion did not state where the witness could be found nor whether his attendance could be procured by a continuance. (Page 38.)

3. SAME.—A continuance on account of the absence of a certain witness living in another county was properly denied to the defendant where his motion stated that he "had just been advised that said witness will not be able to be present at this term of court on account of sickness, that as soon as he learned of this he had a subpœna issued for him," but did not show that he made any effort to procure his attendance until he learned that he was sick and could not attend. (Page 39.)

4. EVIDENCE—HEARSAY.—Refusal of the court, in a murder case, to permit defendant to prove what a surgeon said in regard to an operation performed on deceased was not error where the record does not show that the surgeon was beyond the court's jurisdiction or unable to attend, or that any offer was made to show what he had previously testified as a witness. (Page 39.)

Appeal from Randolph Circuit Court; *John W. Meeks,* Judge; affirmed.

*H. L. Ponder,* for appellant.

. *Robert L. Rogers, Attorney General.*

1. There was no abuse of discretion in refusing the motion for continuance.

2. The court's right to instruct the jury as to the weight to be attached to the defendant's testimony is fully settled. 62 Ark. 556.

RIDDICK, J. The defendant, Jake Weatherford, was indicted by the grand jury of Randolph County for murder in the second degree for killing Joseph Williams by striking him on the head with a bottle.

The evidence shows that on 6th of November, 1904, Weatherford and Williams and some other young men were playing cards in a thicket. They had whisky, which several of them drank. They wagered small sums of money on the game which they were playing, and the result was that defendant lost what small amount of cash he had, which was less than a dollar. After this he started away. As he went away, he picked up a sack of crackers which belonged to Williams, and which he had placed on the ground near where the game was being played. Weatherford opened the sack of crackers, and began to eat some of them. In doing so he tore the sack and scattered some of the crackers on the ground. Williams then said to him: "If you want some of those crackers, eat them like a man, but do not waste them in that way." Weatherford then threw the sack down. There is a conflict in the evidence as to what happened afterwards.

The witnesses for the State say that Williams went to where the crackers were scattered on the ground, and began to pick them up, and that while he was doing this Weatherford turned back and hit him on the head with a bottle he held in his hand. On the

other hand, the witnesses for the defendant testified that Williams, when Weatherford threw the crackers down, went up to him and attempted to cut him with a knife, and that Weatherford then hit him with a bottle.

The effect of the blow was that Williams was knocked down and became unconscious not long afterwards. He was taken home. Doctors were sent for, who took out a piece of the skull, and found that there was a large amount of clotted blood next to the brain, and that the brain itself had been injured by the blow. Williams never regained consciousness, and died that night. The defendant was convicted of involuntary manslaughter, and sentenced to one year in the penitentiary.

These young men were hardly more than boys, the defendant being 21 and deceased 20 years of age. It is evident that the killing was not intentional, but the evidence fully supports the finding that it was not done in self-defense, and that the defendant is guilty of some degree of homicide. As the jury found him guilty of the lowest degree of homicide, the judgment must be affirmed, unless there was some prejudicial error in the proceedings at the trial.

The court instructed the jury fully as to the law of the case, and the only complaint made is that he told the jury that they had the right, in estimating the weight to be attached to the testimony of the defendant, to consider his interest in the trial and verdict. But this court has repeatedly held that it was not error for the trial judge to give such an instruction. *Hamilton* v. *State,* 62 Ark. 543; *Jones* v. *State,* 61 Ark. 102; *Vaughan* v. *State,* 58 Ark. 362.

It is also insisted that the court erred in refusing to grant a continuance on motion of defendant on account of the absence of Lucian Pickett and Dr. P. McCabe. But the motion for continuance did not state where Lucian Pickett could be found. It stated that subpoenas had been issued to three different counties in the State, Union, Howard and Randolph, and that the sheriff of each county made return that he was not to be found in his county. It not being shown that the attendance of the witness could be procured by a continuance, it was within the discretion of the presiding judge to overrule the motion for continuance on that ground.

As to the other witness, it was not shown that any effort had been made to secure his attendance. In fact, the affidavit states that defendant "had just been advised that said witness will not be able to be present at this term of court on account of sickness, that as soon as he learned of this he had a subpoena issued for him."

The defendant attempts to excuse his failure to use any effort to procure the attendance of the witness by saying that the witness had been put under recognizance by the justice of the peace to appear at court. But that was evidently for the appearance of the witness before the grand jury at the January term. There is no showing that the witness had ever been ordered to attend the circuit court as a witness for defendant. As defendant made no effort to secure the attendance of the witness until he learned that he was sick and could not attend, it may have caused the court to suspect that this belated effort was not to get the witness but to get a continuance. The affidavit does not tell who advised the defendant that the witness could not attend, and is not supported by the affidavit of any one who knew that the witness was in fact sick. He was shown to be absent; but as he lived in another county, and had never been subpoenaed, that was to be expected. The court, we think, committed no error in overruling the motion.

Another ground of error set up in the motion for new trial is that the court erred in refusing to allow defendant to show what Dr. McCabe testified before the county judge in the hearing of an application for bail. But the only reference to this matter we find in the transcript is as follows, towit: "Counsel for defense asks to prove what McCabe said in regard to the operation, and was overruled by the court." But what McCabe said would be hearsay, and the record does not show affirmatively that McCabe was beyond the jurisdiction of the court or unable to attend, or that any offer was made to show what he had previously testified as a witness.

On the whole case, we find no error, and the judgment must therefore be affirmed.